# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

RANDALL E. KNIGHT,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 16-CV-214-LTS

**REPORT AND RECOMMENDATION**

_____

    Plaintiff Randall E. Knight seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Knight argues that the administrative law judge (ALJ), Julie K. Bruntz, erred by discounting Knight's subjective allegations, affording minimal weight to his therapist's residual functional capacity (RFC) opinion, and failing to order consultative examinations. I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND[1]

    Knight filed an application for SSI benefits on August 15, 2013, alleging a disability onset date of April 30, 2001. AR 17, 107-08. Subsequently, Knight amended his application to allege a disability onset date of August 15, 2013. AR 181, 254. The parties do not allege any issue with respect to Knight's amended alleged onset date.

    Knight alleged disability due to coronary artery disease, chronic obstructive pulmonary disease (COPD) (also called emphysema), high blood pressure, past heart

---

[1] For a more thorough overview, see the Joint Statement of Facts. (Doc. 11).

attacks, "anxiety, depression, social phobia, schizoid, [and] avoidant personality." AR 107-08. Knight's application was denied initially and on reconsideration. AR 17, 107-19, 121-35. In connection with those reviews, state agency consultants Drs. Donald Shumate and Laura Griffith evaluated Knight's physical RFC,[2] and Drs. Dee Wright and Beverly Westra evaluated his mental RFC. AR 112-17, 128-33. Drs. Shumate and Wright issued their RFC opinions in October 2013, and Drs. Griffith and Westra issued their opinions in March 2014. *Id.*

The ALJ held a video hearing on September 22, 2015, and issued a written decision denying Knight SSI benefits on October 7, 2015, following the familiar five-step process outlined in the regulations.[3] AR 17-31, 38-39. The ALJ found that Knight's severe impairments included emphysema; coronary artery disease, status post remote myocardial infarction and interventions; COPD; status post hernia surgery; depression; and anxiety. AR 19. The parties do not contend that the ALJ erred in assessing the severity of Knight's impairments.

To evaluate whether Knight could perform his past or other work, the ALJ determined his RFC:

> [T]he claimant has the [RFC] to perform light work . . . such that he could lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for six hours of an eight hour workday and sit for six hours of an eight hour workday. His ability to push and pull,

---

[2] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[3] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 416.920(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

including the operation of hand and foot controls, is unlimited within the above weights. He is left handed. He can occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds and never work around heights and dangerous machinery. He can occasionally stoop, kneel, crouch, and crawl and he has no limits on balancing. He should avoid concentrated exposure to extreme cold, fumes, odors, gases, poor ventilation and dust. [Knight] is limited to simple, routine tasks and can have only short-lived superficial contact with the public, coworkers and supervisors.

AR 21. To determine Knight's RFC, the ALJ considered treatment records, the claimant's testimony, function reports, and RFC opinions from the state agency consultants and Knight's therapist. AR 21-29. The ALJ assigned "great weight" to the opinions of the state agency consultants and "minimal weight" to the opinion of Knight's therapist, Tamara Taylor-Hillyer (Therapist Taylor-Hillyer), a licensed social worker. AR 27-29. The ALJ ultimately found that although Knight could not perform his past relevant work, he could work as a counter attendant, production worker, or laundry sorter. AR 30-31. As a result, the ALJ found that Knight was not disabled. AR 31.

The Appeals Council denied Knight's request for review on November 2, 2016 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Knight filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 14, 17, 19[4]), and the Honorable Leonard T. Strand, Chief United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

---

[4] Knight's reply brief was untimely filed (Docs. 16-19; LR 7(g)), and I could decline to consider it on that basis alone. In the interest of considering all the issues Knight has raised, however, I will consider the untimely reply.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Knight alleges that the ALJ erred in three ways: (1) improperly discounting Knight's subjective allegations without identifying inconsistencies in the record as a whole; (2) failing to properly evaluate the opinion of Therapist Taylor-Hillyer; and (3) failing to order consultative examinations. Doc. 14.

### A. Knight's Subjective Allegations

Knight argues that the ALJ improperly discredited his subjective complaints related to his mental limitations.[5] Doc. 14 at 12-16. When evaluating the credibility of a claimant's subjective complaints, including nervousness, the ALJ must consider the

---

[5] It appears that Knight challenges only the ALJ's evaluation of his mental limitations: he argues that his activities of daily living were structured to avoid contact with others (to avoid stressors causing social phobia and anxiety) and thus were not inconsistent with a claim of disability; that the ALJ erred in noting that the silence of treating physicians in imposing functional restrictions was inconsistent with a claim of disability, specifically noting that Therapist Taylor-Hillyer provided limitations when asked to do so; and that "[w]hile Mr. Knight's failure to quit smoking may be inconsistent with his physical complaints, it is irrelevant to his mental impairments and limitations." Doc. 14 at 13-15. To the extent Knight also challenges the ALJ's evaluation of his physical limitations, I find the record shows Knight engages in significant activities of daily living that supports the ALJ's consideration of Knight's reported physical limitations. *See* AR 51 (takes walks and does housework, including vacuuming); 53 (does not use assistive device to walk); 55 (ability to lift items and walk), 59 (takes walks, cleans, makes dinner); 284-88 (runs errands, takes walks, does housework and cooks); 336; 339; 372-74; 701; 733; 990.

factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986).[6] "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. The ALJ may not discount a claimant's subjective allegations based "solely on a lack of objective medical evidence." *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991). The ALJ may reject a claimant's subjective complaints, however, based on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). "The ALJ [i]s not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

Knight testified that he is disabled "mostly" because of his physical problems. AR 53. He stated that he was forced to resign his job in 2001 after missing work due to his depression. AR 47-48, 304. He reported continuing to suffer from depression and having trouble leaving his house some days. AR 22, 51-53.[7] He also testified that he suffers from anxiety and does not like being around crowds, although he does well one-on-one. AR 52-53. He stated that he has trouble concentrating due to his mental impairments. AR 22, 51.

---

[6] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

[7] Two pages of the transcript are missing from the administrative record. *See* AR 50-51.

5

The ALJ found Knight's subjective complaints inconsistent with his activities of daily living. AR 29. Substantial evidence supports that Knight is able to pay bills, handle money, do the dishes and other housework, make dinner daily, care for his houseplants and pet cats, garden, and read the news on his computer. AR 29, 51, 57-58, 284-87, 339, 730. He reported watching television in the evenings and going for walks in parks or on trails two to four times a week. AR 51, 287, 733, 990. He is teaching himself to play guitar. AR 58, 730. He goes grocery shopping once a week at a large grocery store during the morning (when it is less crowded), and he also occasionally shops for clothes. AR 51, 286, 372. He volunteers once a week at the Raptor Center, where he feeds birds, changes their water, and cleans. AR 65, 287, 990. Occasionally, visitors are around, but he does not interact with them unless they initiate conversation. AR 65. He also goes out to dinner every once in a while. AR 58. Substantial evidence supports the ALJ's determination that Knight's activities of daily living are inconsistent with a complete inability to concentrate or to be around crowds; rather, Knight's activities of daily living support that he can work on "simple, routine tasks" with "only short-lived superficial contact" with people, as found by the ALJ (AR 21). *See Halverson v. Astrue*, 600 F.3d 922, 925, 932 (8th Cir. 2010) (substantial evidence supported that disability due to social phobia, depression, and anxiety was inconsistent with claimant's ability to care for herself and a pet, prepare meals "do laundry, change sheets, clean her house, iron clothing, vacuum, wash dishes, drive her car, run errands, go out alone, take out trash, wash her car, go shopping, manage her finances, watch television, and read occasional self-help books"); *Pearsall v. Massanari*, 274 F.3d 1211, 1215, 1218 (8th Cir. 2001) (substantial evidence supported that claimant's activities of daily living—which included "doing yard work, watching television, listening to music, . . . going to the library," and making "simple recipes"—were "not indicative of intense fears of crowds or people").

The ALJ also outlined the claimant's mental-health treatment records. AR 25-27. In August 2013, Therapist Taylor-Hillyer observed Knight's mood to be neutral, although

6

she noted his mood fluctuated based on his physical problems. AR 453. At that session (his last with Therapist Taylor-Hillyer until 2015), he denied suicidal ideation and reported that therapy helped manage his mood. *Id*. In November 2013, Knight reported worsening depression with the change in season and varying anxiety. AR 679. In March 2014, he reported moderate depression and flares in anxiety some days, and a psychiatrist observed a normal mental status except a serious and restricted affect and monotone speech. AR 723. In June 2014, Knight reported periodic depression and insignificant anxiety (and stated he did not always need to take his anxiety medications), although the psychiatrist noted Knight avoided anxiety-inducing situations. AR 725. A psychiatrist noted that his affect was serious, restricted, and "somewhat down" and that he spoke in a monotone, but other than that, observed nothing abnormal. AR 725. In October 2014, Knight reported sometimes "losing the thread of conversation," "periodically feel[ing] depressed but some days [feeling] . . . happy," and suffering less anxiety due to his medications. AR 727-28. In April 2015, a psychiatrist observed a normal mental status examination except for a "slightly restricted" affect. AR 731. Knight reported "some discomfort around people," but no recent panic attacks. AR 730. Knight reported doing "not too bad" on his current medications (and the psychiatrist noted he was doing "quite well"), but he also reported that his mood was "kind of low" (rated as 6/10) and that he occasionally had a passive death wish, so his antidepressant dosage was increased. AR 730-31. In June 2015, a psychiatrist noted Knight "continues to do quite well," although Knight rated his mood as 6/10 and reported his concentration could be better. AR 732-33. In August 2015, Therapist Taylor-Hillyer observed an anxious and depressed mood and affect, but an otherwise normal mental status, and Knight reported fluctuating suicidal thoughts with no plan or intent. AR 989-90. When he sought treatment for his physical ailments, Knight usually reported anxiety and depression during the review of systems (but not always) (AR 690, 697, 782, 787, 790, 796, 801, 806, 816, 886, 913), and doctors sometimes observed a flat affect (AR 778, 783, 791, 797, 802, 806, 810, 817, 887) but other times observed a normal mood and affect (AR 697, 702, 736, 742, 745,

7

873, 880, 965). Substantial evidence supports the ALJ's determination that "the record does not fully support the severity of the claimant's allegations." AR 29. The ALJ did not err in declining to fully credit Knight's testimony regarding his mental impairments. *See Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (holding that ALJ gave good reasons for discounting claimant's credibility when the claimant "made inconsistent reports of her activities of daily living").[8]

### B. Therapist Taylor-Hillyer's RFC Opinion

Knight argues that the ALJ erred in assigning Therapist Taylor-Hillyer's RFC opinion minimal weight (AR 28). As the ALJ recognized, as a licensed social worker (as opposed to a psychologist or psychiatrist), Therapist Taylor-Hillyer is not an acceptable medical source whose opinion may be entitled to controlling weight under the regulations (AR 28). 20 C.F.R. §§ 416.902(a), 416.927(a)(1), (c).[9] The ALJ must still consider opinions from nonacceptable medical sources, however, using the following factors to determine the weight to assign the opinion:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

---

[8] As Knight points out, the other reasons given by the ALJ for discounting Knight's subjective complaints relate to his physical impairments: the ALJ noted that Knight failed to quit smoking, despite his respiratory problems, and that his physicians ordered him to "walk briskly 30 minutes most days," rather than imposing functional restrictions. AR 29.

[9] New regulations for evaluating medical opinions went into effect on March 27, 2017, and some, by their terms, apply retroactively. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The Eighth Circuit has applied these new rules retroactively, which are substantively the same as the old rules. *See, e.g.*, *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). I cite to the new 2017 regulations.

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) (2008)); *see also* 20 C.F.R. § 416.927(c), (f)(1).

Therapist Taylor-Hillyer opined that Knight would be able to understand, remember, and carry out short and simple instructions; make simple work-related decision; respond appropriately to changes in a routine work setting; and get along with coworkers without distracting them. AR 983-84. She found him seriously limited, however, in his ability to maintain attention for two hours at a time, to work in coordination with or proximity to others without being distracted, to respond appropriately to criticism from supervisors, to maintain socially appropriate behavior, and to perform at a consistent pace. AR 983. She also found that he would not be able to deal with ordinary work stress or interact with the general public and that he would miss more than four days of work a month. AR 983-84. She opined that he suffered from marked limitations in his activities of daily living; marked limitations in maintaining concentration, persistence, or pace; and extreme difficulties in maintaining social functioning. AR 986; *see also* AR 419-20.

Contrary to Knight's argument otherwise, the ALJ "consider[ed]" Therapist Taylor-Hillyer's RFC opinion "with respect to [the] severity" of Knight's mental impairments and their "effect on function." AR 28. The ALJ assigned it little weight, however, because the ALJ found the extreme limitations opined by Therapist Taylor-Hillyer "contrast[ed] with other evidence in the record." AR 28. As the evidence outlined in the preceding section demonstrates,[10] substantial evidence supports this determination: for example, substantial evidence supports that Knight suffered from only mild limitations in his activities of his daily living, as found by the ALJ (AR 20), not marked limitations as found by Therapist Taylor-Hillyer. The ALJ did not err in

---

[10] Knight focuses only on the specific evidence cited by the ALJ in the paragraph discussing the weight assigned to Therapist Taylor-Hillyer's RFC opinion, but the ALJ spent two pages outlining the mental-health treatment records, which further support the ALJ's finding that Therapist Taylor-Hillyer's RFC opinion is inconsistent with the overall record.

9

affording Therapist Taylor-Hillyer's RFC opinion little weight based on a finding (supported by substantial evidence) that the marked and extreme limitations opined by Therapist Taylor-Hillyer were inconsistent with the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If [an RFC] opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can afford it less weight.'" (quoting *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003))); *see also Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (holding that the ALJ may "diminish[] the weight given the treating physician['s] opinion[]" based on a finding that it is inconsistent with the claimant's activities of daily living).

### C. Consultative Examination

Knight argues that because no mental RFC opinion from a treating or examining medical source is in the record, the ALJ should have ordered consultative examinations. The regulations provide that the Social Security Administration "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [the] claim." 20 C.F.R. § 416.919a(b). "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for [the ALJ] to make an informed decision." *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) (per curiam) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)). When the only RFC opinions in the record are from non-examining sources, and numerous treatment notes "establish[] that [claimant] suffer[s] from . . . impairments which prevent him from performing his past relevant work," but not how those impairments "affect his [RFC] to do other work," then further development of the record is necessary under *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000). But *Nevland* does not require that the ALJ order a consultative examination or otherwise develop the record when "other medical evidence in the record"—such as treatment notes—"clearly establishes a claimant's RFC to do other work[] and to function in the workplace." *Kruger v. Colvin*, No. C13-3036-

10

MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014), *report and recommendation adopted by* 2014 WL 2884038 (N.D. Iowa June 25, 2014). "The ultimate question, then, is whether a critical issue was underdeveloped . . . such that the ALJ's decision was not supported by substantial evidence." *Kruger*, 2014 WL 2884038, at *2.

Knight argues that "[t]he record clearly supports greater mental limitations than found by the ALJ," relying primarily on a May 2011 letter from one of Knight's therapists who also led his group therapy, as well as Therapist Taylor-Hillyer's treatment records. Doc. 14 at 8-10; *see also* AR 415-17, 423-454, 989-992. But as outlined previously, the record as a whole does not reflect greater mental limitations than those found by the ALJ: the mental-health treatment records reflect that Knight occasionally reported suffering from moderate depression and anxiety, but he just as often reported that he was doing well, and the treatment records for both his mental and physical ailments often reflect a normal mental status examination. Moreover, the ALJ's RFC opinion is consistent with Knight's activities of daily living and the RFC opinions of Drs. Lark and Westra, the state agency consultants. AR 101-03, 131-33. The ALJ did not need to order a consultative examination to determine Knight's mental RFC. *See Lewis Smith v. Colvin*, No. C14-4076-LTS, 2016 WL 1248874, at *11 (N.D. Iowa Mar. 29, 2016) (no examining-source physical RFC opinion required because the claimant's "physical impairments were not complex": after the claimant had carpal tunnel surgery, she "subsequently sought little treatment"; "had no serious problems . . . with her hands or fingers"; and had normal physical examinations, although she did occasionally report hand pain; and although her right knee had been replaced, treatment notes reflected normal objective tests and no reports of significant knee problems); *Agan v. Astrue*, 922 F. Supp. 2d 730, 755-56 (N.D. Iowa 2013) (no examining-source opinion required when the claimant recovered well from back surgery and was able to return to work; a treatment note from after his surgery reflected a lifting limitation, but no other restrictions; and his post-surgery "complaints of back pain were related to medication refills or new injuries

11

that provoked his back pain"); *cf. Morris v. Colvin*, No. C14-4068-LTS, 2016 WL 3360506, at *10 (N.D. Iowa June 16, 2016) (an examining-source opinion was required when "mental health treatment notes" from multiple years "reflect[ed] serious, 'uncontrolled' impairments with severe symptoms and in-patient psychiatric hospitalization," but not how the claimant's impairments "affect[ed] his ability to function in the workplace"); *Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at *10 (N.D. Iowa Apr. 3, 2014), (an examining-source opinion was needed to evaluate claimant's limitations related to her migraines when her migraines occasionally lasted more than a day, they resulted in her visiting her doctor or the emergency room for treatment, and the state agency consultants opined that she could not "adequately perform her activities of daily living while . . . experiencing a migraine"), *report and recommendation adopted*, 2014 WL 2884028 (N.D. Iowa June 25, 2014).

Knight also asserts that the ALJ should have ordered a physical consultative examination. He argues that in the interim between the state agency consultants' reviews (on October 8, 2013, and March 11, 2014) and the ALJ issuing her opinion on October 7, 2015, "[m]uch happened" to him, which warranted further review by a consultative examiner. Doc. 14 at 10-12.

In January 2014, Knight had a general physical appointment with a new provider, and he complained of nausea, fatigue, knee pain, and muscle weakness in his arms. AR 815. After viewing an x-ray and magnetic resonance imaging (MRI) of his knee, a doctor opined that his knee "should get better with time" and offered a cortisone injection in the meantime, which Knight declined. AR 691-92, 809, 914-17. In February 2014, Knight had appointments with an urologist for incontinence problems (who determined there was "really . . . nothing bad wrong") and with a cardiologist for a yearly check-up because of a stent placed in 2006 (the exam was noted as unremarkable, and Knight was encouraged to stop smoking and to exercise). AR 684-85, 701, 800, 866-68. In June 2014, Knight complained of knee pain with activity, and his provider encouraged him to obtain injections. AR 805-06. In September 2014, he complained of fatigue at a check-

12

up for high blood pressure and high cholesterol. AR 795-97. His hernia (which he had had since 2013) worsened in November 2014, and he had surgery to remove it in January 2015, after multiple examinations to evaluate whether his heart and lungs could withstand surgery (which included a chest x-ray and computed tomography (CT) scan revealing new lung scarring). AR 696, 744, 746, 787-89, 863, 872, 885, 908-09. The surgery was successful, and two weeks later, Knight reported no pain (and that he had stopped taking pain medications), but his surgeon kept the six-week lifting restriction in place to be safe. AR 860. Six weeks after surgery, Knight reported that he was "doing well," and his doctor cleared him for all "activity as tolerated." AR 859. In mid-February 2015, Knight was hospitalized for five days with the flu, and he had to be on oxygen due to exacerbation of his COPD. AR 938-39, 955-78. He was discharged and instructed to follow up in three weeks. AR 25, 977-78. Near the end of March 2015, he reported that he had left the hospital against medical advice and that he was still suffering chest congestion. AR 739-43, 777-80. He reported "occasional" shortness of breath with heavy lifting and bending over. AR 739. His provider found his COPD was exacerbated and recommended pulmonary rehabilitation and prescribed an inhaler as needed. AR 740, 743. In June 2015, he returned for a follow-up. AR 734-37. A CT of his chest showed "very advanced" COPD, but Knight reported that he was "feeling better than at his last visit," and doctors continued the "current treatment plan" with a follow-up visit scheduled in six months' time. AR 734-37, 940-41.

Knight argues that the treatment records related to his hernia surgery in January 2015 and his exacerbated COPD in February and March 2015 demonstrate that his physical condition had changed such that the ALJ could not rely on Drs. Shumate's and Griffith's RFC opinions. But the record reflects that he recovered well from hernia surgery, and his COPD exacerbation improved from February to March and March to June 2015. Although the state agency consultants did not have the opportunity to review all the treatment records before forming their opinions, "there is always some time lapse between the [state agency] consultant[s'] report[s] and the ALJ's hearing and decision,"

13

and "[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Mangrich v. Colvin*, No. C15-2002-LTS, 2016 WL 593621, at *8 (N.D. Iowa Feb. 12, 2016) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). Knight's condition did not deteriorate such that the ALJ could not rely on the state agency opinions, and a consultative examination was not required for the ALJ to make an informed decision.

Knight relies on *Dixon v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003), in which the ALJ discounted a treating physician's lifting restriction of ten pounds after finding the "results of his cardiolite test do not support" the lifting restriction. "The ALJ did not explain the significance of the negative cardiolite test," and no "explanation of its implications" appeared in the record, so the Eighth Circuit held that "[t]he record need[ed] to be more fully developed regarding what specifically the cardiolite test results, among other information, mean[t] relative to claimant's ability to work." *Id*. Here, the ALJ conducted an independent review of the treatment records as a whole, rather than relying on one particular test. AR 22-25. Moreover, *Dixon* did not address the circumstances under which a consultative examination must be ordered: in that case, opinions from treating physicians, a consultative examiner, and state agency consultants were in the record. 324 F.3d at 999-1000. Knight's argument—that new chest x-rays and CT scans, unreviewed by the state agency consultants, required a consultative examination—is unpersuasive and not supported by *Dixon*.

### III. CONCLUSION

I respectfully recommend that the decision of the Social Security Administration be **affirmed** and that judgment be entered in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.

Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DATED** this 15th day of February, 2018.

_____
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa